IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| GREGG L. DUCKWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02-cv-00381-JLF |
| ) | |
| DAVID J. MADIGAN, ) | |
| MAHER AHMAD, M.D., ) | |
| and FRANCIS KAYIRA, M.D., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT MAHER AHMAD, M.D.'S MOTION FOR SUMMARY JUDGMENT

Defendant Maher Ahmad, M.D. ("Defendant") is not entitled to summary judgment. Defendant acted under color of state law in serving as the medical director of Champaign County Correctional Center ("Champaign County") because he assumed Champaign County's duty to provide medical care to Plaintiff. Therefore, Defendant is subject to liability under Section 1983.

Furthermore, despite knowing that Plaintiff suffered from visible blood in his urine, which may indicate the presence of life-threatening cancer, Defendant ignored Plaintiff's symptoms, failed to order the proper diagnostic testing to identify his cancer, and refused to return Plaintiff to the outside consultants capable of diagnosing his cancer despite their recommendation that he do so. Accordingly, summary judgment is inappropriate because a jury could reasonably find that Defendant deliberately disregarded Plaintiff's medical needs.

**I.    Summary Judgment is Inappropriate Because Defendant Ahmad Acted Under Color of State Law in Providing Medical Care to Mr. Duckworth**

**A.    Relevant Facts**

Plaintiff brought this lawsuit against Defendant and other individuals for failing to properly treat and diagnosis his bladder cancer.  See Plaintiff's Complaint, Docket Entry No.1.  Plaintiff experienced recurring episodes of gross hematuria[1] during the approximately nine months he was under Defendant's care at Champaign County.  See Excerpts from Plaintiff's Deposition dated April 25, 2006, attached hereto as Exhibit 1, pg. 40:7-41:3.

Champaign County's policies and procedures for health care provide that Champaign County's Sheriff's Office "shall employ a Physician, licensed to practice medicine in the State of Illinois, who shall be responsible for all medical judgements (sic) regarding health care provided to residents at [Champaign County]."  See Excerpts from Champaign County Health Care Policies, attached hereto as Exhibit 2, § 1.0.  However, instead of directly employing a Physician, Champaign County instead contracted with Wexford Health Sources, Inc. ("Wexford") to provide health care services to inmates at Champaign County.  See Excerpts from Deposition of David J. Madigan dated May 3, 2006, attached hereto as Exhibit 3, pgs. 29:20-32:21.  Wexford, in turn, contracted with Defendant to serve as the "Medical Director" of Champaign County.  See Excerpts from Deposition of Maher K. Ahmad dated October 5, 2006, attached hereto as Exhibit 4, pgs. 28:14-21 and 33:17-34:1.

Defendant was the only physician present at Champaign County to provide medical treatment to inmates.  See Exhibit 1, pg. 41:25-42:13; see also Exhibit 10, pg.

---

[1] "Gross hematuria" means the visible presence of blood in the urine.

14:22-15:4; Exhibit 1, pg. 21:8-12. Defendant was the only physician present at Champaign County with authority to refer an inmate to an outside facility for medical treatment. See Exhibit 4, pg. 46:8-47:3. Defendant would visit Champaign County weekly to provide medical care to sick inmates. See Exhibit 4, pg. 40:9-20.

Champaign County's health care policy explicitly provided that "final medical judgements (sic) regarding the health care needs of the residents at the Champaign County Correctional Center shall be the sole responsibility of the Physician." Exhibit 2, § 1.0. The former Sheriff of Champaign County testified that Defendant was solely responsible for determining the type of medical treatment an inmate should receive, what tests should be ordered, and whether an inmate should be transferred to an outside facility for further treatment. Exhibit 10, pg. 71:4-20.

### B. Defendant Assumed Champaign County's Duties to Provide Care

As a matter of law, Defendant acted under color of state law in providing medical care to Plaintiff, and is therefore subject to liability under Section 1983, because he assumed the duty of Champaign County to provide medical care to Plaintiff by contracting with Wexford to work as the medical director at Champaign County.

Defendant's Memorandum in Support correctly notes that United States Supreme Court's holding in West v. Atkins requires a plaintiff bringing a claim under Section 1983 to establish that the defendant acted "under color of state law." 487 U.S. 42, 48 (1988). Defendant's Memorandum also correctly recognizes that the West opinion is the preeminent authority regarding the liability of contracted physicians pursuant to Section 1983. However, Defendant misinterprets the proper application of the holding in West.

Defendant incorrectly assumes that the <u>West</u> opinion requires a physician to have an employment contract with the state to provide medical care to inmates in order to hold the physician liable under Section 1983 for acting under color of state law.  There is simply no such requirement in the <u>West</u> opinion.  The defendant-physician in <u>West</u> happened to have an employment contract with the state to work part-time providing medical care to inmates, but the <u>West</u> opinion does not limit the application of its test to only physicians with similar employment contracts directly with the state.

In fact, Defendant's assumption is inconsistent with the test established by the <u>West</u> court to determine Section 1983 liability of physician-contractors, which is whether the relationship between the state, the physician, and the prisoner shows that the physician assumed by contract the state's burden to provide medical care to the prisoner.  <u>Id.</u> at 56.  The <u>West</u> court emphasized that "Contracting out prison medical care . . . does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."  <u>Id.</u>  The <u>West</u> court does not suggest that a plaintiff-prisoner is barred from seeking recovery for violations of his Eighth Amendment rights simply because the physician who treated him is an independent contractor affiliated with a medical services company instead of a contracted employee with the state.

The Northern District of Illinois considered a very similar situation in <u>Henry v. Ryan</u>, 775 F.Supp.2d 247 (N.D. Ill. 1991).  In that case, the court held that Correctional Medical Systems of Illinois, Inc. ("CMS") and its employees were state actors subject to potential Section 1983 liability because CMS "entered into a contract with DuPage County to provide medical services and health care evaluations" to inmates.  <u>Id.</u> at 250.

The court concluded that CMS and its staff assumed DuPage County's obligation to provide medical care to inmates, and therefore could be considered state actors.

Numerous other courts throughout the United States have reached similar conclusions regarding the liability of physician-contractors who provide health care to inmates through contractual relationships between the physician, a private company, and the state. See <u>Johnson v. Karnes</u>, 398 F.3d 868 (6th Cir. 2005) (holding that a private physician provided to plaintiff-prisoner's jail by an independent contracting company could be held liable under Section 1983 for acting under color of state law by ignoring the plaintiff's medical needs); <u>Walker v. Horn</u>, 385 F.3d 321 (3rd Cir. 2004) (citing the Supreme Court's holding in <u>West v. Adkins</u> in recognizing that a physician employed by a private medical company who has contracted to provide medical care to inmates acts under color of state law); <u>Wilson v. Douglas County</u>, 2005 U.S. Dist. LEXIS 28541 (D. Neb. November 10, 2005) (holding that Wexford is a state actor potentially subject to liability under Section 1983 after contracting to provide health care services to prison inmates).

In this case, Defendant assumed the same responsibilities as the prison doctors in <u>Johnson</u>, <u>Walker</u>, <u>West</u>, and <u>Wilson</u>. He was the only physician who visited inmates when they asked to see a doctor, he was the only physician who could write prescriptions for inmates, and he was the only physician who could refer inmates to outside medical providers. Furthermore, Champaign County's policies charged Defendant with sole responsibility for all decisions related to medical care provided to inmates. Accordingly, like the cases cited above, Champaign County delegated to Defendant, through Wexford,

its duties to provide health care to inmates, and Defendant accepted this delegation of duty.

Furthermore, the cases Defendant cites in support of his position that private physicians giving medical care to inmates are distinguishable from physicians employed by a prison to treat inmates do not support the distinction that Defendant seeks to make.

Two of the cases cited by Defendant do not even address Section 1983 liability for physicians and are therefore irrelevant. The Eighth Circuit's opinion in Montano v. Hedgepeth, 120 F.3d 844 (8th Cir. 1997), involved claims that a prison chaplain restricted an inmate's religious freedoms. The Montano court, in holding that a chaplain's supervision of inmates' religious activities are not official state actions, actually distinguished the West opinion because chaplains are meant to be independent of the state while physicians directly assume the state's Eighth Amendment obligations to provide medical care to inmates in cooperation with the prison. See id. at footnote 11. Similarly, the Sixth Circuit's opinion in Leach v. Shelby County Sheriff, 891 F.2d 1241 (6th Cir. 1989), addressed only the liability of a sheriff for neglecting the medical needs of a paralyzed inmate. Tellingly, no medical providers were even parties to the lawsuit in Leach, and the case never suggests that contracted physicians do not act under color of state law in providing care directly to inmates.

The third case cited by Defendant, the Fourth Circuit's opinion in Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994), actually supports Plaintiff's position that a physician who provides medical care to an inmate, regardless of the physician's contractual relationship with the prison, acts under color of state law is therefore subject to claims under Section 1983. The defendant physician in Conner worked at a private

orthopedic clinic and treated the plaintiff inmate only after the inmate was referred to the defendant by the on-site prison physician. Id. at 221-22. Neither the defendant nor the clinic that employed him had "a contractual relationship with any correctional facility to provide care for its inmates." Id. at 222.[2]

The Conner court concluded that the defendant physician acted under color of state law in treating the plaintiff-inmate, even though the defendant did not have any contractual relationship with the prison because the Supreme Court's opinion in West "applies also to private physicians who treat state prisoners without the benefit of a contract." Id. at 225 ("Regardless of whether the private physician has a contractual duty or simply treats a prisoner without a formal arrangement with the prison, the physician's function within the state system is the same: the state authorizes the physician to provide medical care to the prisoner, and the prisoner has no choice but to accept the treatment offered by the physician.").

In this case, like in Conner, the Defendant was authorized by Champaign County through its contract with Wexford to provide medical care to Plaintiff, and Plaintiff had no choice but to accept treatment from Defendant. Consequently, the Conner court agrees with the court opinions within this Circuit holding physician-contractors liable under Section 1983 after they have assumed the state's role in providing medical care to inmates. Accordingly, Defendant is not entitled to summary judgment because he acted under color of state law in providing medical treatment to Plaintiff.

---

[2] Notably, the defendant only provided treatment to the inmate at the outside clinic, and never visited the inmate at the prison. Id. Thus, the Conner case is distinguishable from the instant case because Defendant had, through his contractual relationship with Wexford, assumed Champaign County's responsibility to provide direct medical care to Plaintiff.

## II. Summary Judgment is Inappropriate Because Genuine Issues of Fact Exist Concerning Whether Defendant was Deliberately Indifferent to Plaintiff's Medical Needs

Defendant is not entitled to summary judgment because there are numerous disputed issues of material fact regarding the treatment that Defendant was obligated to provide to Plaintiff in light of the obvious dangers to his health and well-being, which Defendant utterly failed to do.

Defendant correctly notes that a plaintiff must show two elements in order to succeed on a Section 1983 claim, i.e., that the deprivation of needed medical treatment must be objectively and sufficiently serious, and the prison physician must also know of and disregard an excessive risk to the prisoner's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Greeno v. Daley, 414 F.3d 645, 652-53 (7th Cir. 2005).

Notably, Defendant readily concedes the first prong of this test by stating that Plaintiff's bladder cancer is "unequivocally serious and life-threatening," and Defendant attempts to contest only the second element that Defendant did not know and disregard the need for medical treatment of Plaintiff's unequivocally serious and life-threatening condition. See Defendant's Memorandum of Law in Support, [Docket No. 74], pg. 10. However, the facts in the record of this case show that Defendant both knew of the need for treatment of Plaintiff's potentially life-threatening medical condition, and that Defendant disregarded the need for that treatment.

### A. Defendant Knew of the Obvious Risk to Plaintiff's Health

Defendant fails to acknowledge that the very nature of the risk to Plaintiff's health was sufficient to put Defendant on notice of grave danger to Plaintiff's health. The United States Supreme Court has recognized that "a factfinder may conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious." Farmer v. Brennan, 511 U.S. 825, 842 (1994). Numerous courts have determined as a matter of law that the presence of blood in the urine constitutes an obvious sign that a patient may be suffering from dangerous or even life-threatening conditions. See, e.g., Ingalls v. Florio, 968 F.Supp. 193, 202 (D. N.J. 1997) (urinating blood is serious medical need demanding care).

In this case, the factual record conclusively establishes that hematuria is sign that can indicate a variety of medical conditions that may vary in severity from innocuous to life-threatening. See Affidavit of David A. Hardy, M.D. a urologist with thirty-four years of practice experience, attached hereto as Exhibit 5, ¶ 3. Defendant admitted at his deposition that he understood that hematuria can be a sign of life-threatening cancers in the urinary tract. See Exhibit 4, pg. 51: 6-23. Defendant also admitted that he was aware that Plaintiff experienced gross hematuria from Defendant's very first meeting with Plaintiff on August 24, 1999. See Exhibit 4, pgs. 64:15-65:1. Furthermore, it is impossible to determine rule out cancer as the condition causing hematuria until a full workup of testing procedures is completed. See Exhibit 5, ¶ 4. Consequently, by Defendant's own admission, Defendant's hematuria was sufficient to put Defendant on notice that Plaintiff may face a substantial risk to his health.

### B.   Defendant Disregarded the Obvious Risks to Plaintiff's Health

Defendant disregarded the obvious risk to Plaintiff's health and well-being. The Supreme Court of the United States has recognized that "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994). A "prisoner claiming deliberate indifference need not prove that the prison officials intended, hoped for, or desired the harm that transpired." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Furthermore, a prisoner is not required to show that he was literally ignored by a prison's medical staff. Holmes v. Sood, 2005 U.S. Dist. LEXIS 32789, at *30 (N.D. Ill. 2005).

Courts in the Seventh Circuit have acknowledged several forms of conduct that show deliberate indifference to a prisoner's medical needs. One way in which prison physicians show deliberate indifference to an inmate's medical needs is by failing to order or run the appropriate diagnostic testing to determine the condition causing a patient's symptoms. See Sherrod v. Lingle, 223 F.3d 605, 608, 611-12 (7th Cir. 2000) (holding that summary judgment was inappropriate where the plaintiff exhibited symptoms of appendicitis, a health risk of which the defendants were aware, but the defendant providers merely treated the plaintiff's symptoms and did not test for appendicitis); Holmes v. Sood, 2005 U.S. Dist. LEXIS 32789, at *30 (N.D. Ill. 2005) (holding that summary judgment was inappropriate where the defendant doctor "treated [plaintiff] symptomatically, without any attempt to evaluate the cause of his symptoms," and failed to perform any of the diagnostic procedures that would have identified the cause of plaintiff's bowel distention and pain).

Another way in which prison physicians show deliberate indifference to an inmate's medical needs is by "persisting in a course of treatment known to be ineffective." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) (holding that the defendant doctor's routine ordering of the same treatment which repeatedly showed the

same results, while ignoring the prisoner's requests for different diagnostic testing to identify the cause of his severe heartburn and vomiting, was sufficient evidence of indifference to the plaintiff's medical needs to defeat summary judgment).

In this case, the factual records shows that Defendant disregarded Plaintiff's medical needs despite an known risk of severe harm, including life-threatening cancer, to Plaintiff's health. First, Plaintiff did not receive the proper diagnostic testing to identify the cause of his treatment. Defendant learned while treating Plaintiff on August 24, 1999 that Plaintiff was visibly observing blood in his urine, and Defendant subsequently verified that knowledge with urinalyses showing the presence of blood in Plaintiff's urine. See Exhibit 4, pgs. 64:15-65:1. Defendant should have referred Plaintiff to a specialist within a timely fashion after this first visit for a complete workup that included studies of Plaintiff's urine, imagining of the upper urinary tract, and direct visualizations of the lower urinary tract. See Exhibit 5, ¶ 5. Although Plaintiff was referred to the Christie Clinic for initial treatment, Plaintiff did not receive a complete workup and did not receive a cystoscopy or other imaging of the lower urinary tract at any time during his stay at Champaign County in August of 1999. See Progress Notes from Christie Clinic, attached hereto as Exhibit 6.

Second, Defendant cannot excuse himself from liability by alleging that he turned over responsibility for Plaintiff's treatment to outside consultants at the Christie Clinic. Defendant, as medical director of Champaign County, was the only doctor Plaintiff could see upon request and was the only person at Champaign County with authority to refer Plaintiff to outside consultants. See Exhibit 5, ¶ 6; see Exhibit 4, 41:25-42:13, 46:8-47:3. Regardless of Defendant's single referral of Plaintiff to the Christie Clinic, Defendant

failed to supervise Plaintiff's medical treatment and failed to observe that Plaintiff's symptoms were worsening instead of improving.  See Exhibit 5, ¶ 7.

Moreover, Defendant ignored the advice of the outside consultants, upon which he now relies to disclaim any knowledge of Plaintiff's medical needs, because Defendant did not timely return Plaintiff to Christie Clinic for further testing and treatment despite their recommendation that Defendant do so.  The outside consultants at Christie Clinic advised that Mr. Duckworth should be returned for further treatment if he noticed any more blood in his urine.  See Exhibit 6.  Plaintiff told Defendant on several occasions that he was still experiencing blood in his urine:

> Q. Meaning he should have sent you for further testing to get – to determine if you had cancer?
> A. When the blood come back in my urine a week after I got back or two days after I got back, I was supposed to go back to the doctor at Christie Clinic. I sent several requests in that I was bleeding again and several samples -

See Exhibit 1, pgs. 85:19-86:2, also 27::5-9, 29:2-4.  There is also documentation in the record of at least one written request to Defendant in which Plaintiff asked to be returned to Christie Clinic for further treatment.[3]  See Resident's Request Form dated December 12, 1999, attached hereto as Exhibit 9.

Furthermore, in addition to Plaintiff's requests, Defendant was reminded of Plaintiff's condition on several occasions during the Fall of 1999.  In fact, Plaintiff's medical records show that Defendant continued to run tests on Defendant's hematuria during the Fall of 1999, including further urinalysis testing for Plaintiff in October 1999.

---

[3] Defendant David Madigan, the former sheriff of Champaign County, testified that inmate request forms submitted by inmates at Champaign County during 1999 were destroyed.  See Excerpts from Deposition of David J. Madigan dated May 3, 2006, attached hereto as Exhibit 10, pg.28:8-29:19.  Therefore, a genuine issue of fact exists for the jury to determine regarding how many times Defendant received warnings that Plaintiff was experiencing hematuria and needed to return to the outside consultants.

See Doctor's Order form dated October 8, 1999, attached hereto as Exhibit 7; See Doctor's Orders form dated October 6, 1999, attached hereto as Exhibit 7; see Exhibit 4, pgs. 91:16-92:15.  The test results ordered by Defendant revealed that Plaintiff had elevated levels of "urine blood."  See Urinalysis Report dated October 9, 1999, attached hereto as Exhibit 8.  Defendant was advised of the results of this urinalysis by staff at Champaign County.  See Exhibit 4, pgs. 93:17-94:6.

Even after Defendant allegedly learned in January 2000 that Plaintiff was not being treated by the outside consultants, Defendant refused to return Plaintiff to Christie Clinic and instead chose to follow his own course of action.  See Exhibit 4, pgs. 137:13-138:2.  Thus, like the defendant doctors in Sherrod v. Lingle and Holmes v. Sood who ignored their inmate patients' need for additional testing, Defendant ignored the recommendations of the outside consultants to return for further diagnostic testing if Defendant's symptoms worsened.  See Exhibit 5, ¶ 7 ("Dr. Ahmad . . . failed to act on the recommendations of Mr. Duckworth's outside consultants in order to identify the condition causing Mr. Duckworth's hematuria.").  Thus, a jury could readily interpret Defendant's actual conduct to be inconsistent with leaving responsibility for diagnosis of Plaintiff's hematuria entirely to outside consultants, and to be in disregard of Plaintiff's serious medical needs.

Third, Defendant doggedly persisted in pursuing a course of treatment that he knew or should have known would be ineffective.  Despite knowing as early as August 24, 1999 that Plaintiff had experienced blood in his urine, Defendant repeatedly ran the same urinalyses and urine culture tests that proved only what Defendant knew at the time of his first treatment of Plaintiff.  See Exhibit 5, ¶ 7 ("Dr. Ahmad persisted for a period of

several months in repeatedly ordering blood tests and blood cultures, which simply confirmed that Mr. Duckworth was, in fact, experiencing significant hematuria and that he did not display any signs of infection."). Consequently, like the doctor in <u>Greeno v. Daley</u> who repeatedly prescribed the same treatments for indigestion without performing the necessary diagnostic testing, Defendant persisted in the same ineffective course of treatment. In fact, after supervising Defendant's medical treatment for eight months, until he finally left Champaign County, Defendant still had not reached a diagnosis of the cause of Plaintiff's hematuria or ordered the complete workup necessary to do so. <u>See</u> <u>Exhibit 4</u>, pg. 178:4-21; <u>Exhibit 5</u>, ¶¶ 4-5.

In addition, the record shows that Defendant's deliberately chose not provide additional diagnostic testing or treatment to Plaintiff. Plaintiff wrote a letter to the Captain and Sheriff of Champaign County on February 11, 2000 complaining of the lack of treatment he received for his condition and requesting additional testing. <u>See</u> Letter to the Captain dated February 11, 2000, attached hereto as <u>Exhibit 11</u>. Exhibit 11 contains a handwritten response that Plaintiff received in response to his letter from Lou Wilson, who Defendant identified as a registered nurse at Champaign County. <u>See</u> <u>Exhibit 4</u>, ¶118:5-10. The response that Plaintiff received further evidences how Defendant ignored Plaintiff's medical needs by advising Plaintiff that "The jail MD has checked his urine 3 times since then and no problem. . . Inmate has been informed of this and we aren't doing anything further." <u>See</u> <u>Exhibit 11</u>.

Furthermore, Defendant's own doctor notes on March 14, 2000 show a notation of "no indication for further follow up." <u>See</u> Doctor's Orders form dated March 14, 2000, attached hereto as <u>Exhibit 12</u>. Defendant explained at his deposition that this note

means that Defendant would not have any "further follow-up as far as the urine blood and change in the urinalysis is concerned," despite the fact that Plaintiff complained of hematuria on several occasions and his urinalyses showed consistent levels of blood in his urine. See Exhibit 4, pgs. 136:23-137. Defendant's own statements to Plaintiff that "if this [test result] comes back clear, I don't want to hear no more out of you" illustrates Defendant's disregard for Plaintiff's medical needs. See Exhibit 1, pg. 81:9-19.

Consequently, the record in this case establishes that Defendant failed to order proper diagnostic testing, failed to observe that Defendant's symptoms were worsening, ignored the recommendations of outside consultants to return Mr. Duckworth for further treatment, and persisted in running the same routine tests that merely confirmed Mr. Duckworth's symptoms without attempting to identify the condition causing the symptoms. Summary judgment for Defendant is therefore inappropriate because there are disputed issues of fact in this case that could permit a jury to conclude that Defendant deliberately disregarded Plaintiff's severe medical needs, and that Defendant's disregard needlessly and harmfully delayed the diagnosis of Plaintiff's bladder cancer.

## Conclusion

For the foregoing reasons, Plaintiff Gregg L. Duckworth requests that this Court deny Defendant Maher Ahmad, M.D.'s Motion for Summary Judgment on all counts, and accordingly permit this case to proceed to trial on Plaintiff's counts against Defendant Maher Ahmad, M.D.

        Respectfully submitted by,

        HUSCH & EPPENBERGER, LLC


        By: /s/ Joseph A. Kilpatrick
            Daniel P. Jaffe
            Joseph A. Kilpatrick
            190 Carondelet Plaza, Suite #600
            St. Louis, MO  63105-3441
            Telephone:  (314) 480-1500
            Facsimile:   (314) 480-150

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 20th day of December, 2006 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Jerome P. Lyke, Esq.
Flynn, Palmer & Tague
402 West Church Street
P.O. Box 1517
Champaign, IL 61824-1517

*Attorneys for Defendant David J. Madigan*

Theresa Powell, Esq.
Heyl, Royster, Voelker & Allen
National City Center
1 N. Old State Capitol Plaza, Suite 575
P.O. Box 1687
Springfield, IL 62705-1687

*Attorneys for Defendant Francis Kayira, M.D.*

James J. Hagle, Esq.
Frederick & Hagle
129 West Main Street
Urbana, IL 61802

*Attorneys for Defendant Maher K. Ahmad, M.D.*

                                      /s/ Joseph A. Kilpatrick