IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

GREGG L. DUCKWORTH,            )
                               )
        Plaintiff,             )
                               )
    vs.                        ) Case No. 3:02-CV-00381-JLF
                               )
DAVID J. MADIGAN, MAHER        )
AHMAD, M.D., and               )
FRANCIS KAYIRA, M.D.,          )
                               )
        Defendants.            )

**ORIGINAL**

THE DISCOVERY DEPOSITION OF

DAVID J. MADIGAN, the witness herein, called by the Plaintiff for examination pursuant to notice and pursuant to the provisions of the Code of Civil Procedure and the Rules of the Supreme Court thereof pertaining to the taking of depositions, taken before me, Daphne G. Killam, CSR, License No. 084-004413, a Notary Public in and for the State of Illinois, at 402 West Church Street, in the City of Champaign, County of Champaign, and State of Illinois on the 3rd day of May, A.D., 2006, commencing at 2:00 p.m.

EXHIBIT 3

1   A.   Yes.

2   Q.   And what does that stamp say?

3   A.   Disposition approved.

4   Q.   And what would that mean?

5   A.   I would take it that the request to destroy

6   those forms listed would be approved.

7   Q.   That's just your understanding of it?

8   A.   Yes.

9   Q.   What is the date of this form?  Am I correct, it

10  has been stamped as being received on a certain date?

11  A.   The one in the lower right-hand corner?

12  Q.   I'm sorry, sir, I'm back to the top of the

13  document.  Do you see received stamp?  I'll point that

14  out to you.

15  A.   December 21, 2005.

16  Q.   Okay.  So am I correct that this would indicate

17  the resident request forms for 1999 had been destroyed

18  sometime after December 21, 2005; is that right?

19  A.   I would say that, yes.

20  Q.   Okay.  I would like to ask you now, sir, more

21  about the relationship between Champaign County and

22  Wexford.  You previously testified that Champaign County

23  had a contract with Wexford for providing medical

1  services to the inmates; is that correct?
2      A.   That's correct.
3      Q.   Okay.  And you were the sheriff at the time the
4  decision was made to contract out those services; is that
5  correct?
6      A.   That's correct.
7      Q.   Did you have any role in that decision?
8      A.   Pardon?
9      Q.   Did you have any role in that decision in terms
10 of -- let me ask the first question.  How was that
11 decision made?
12     A.   As I recall, I took it to the county board to
13 request that medical services be contracted out through
14 the county board process that was approved.
15     Q.   And what was your reason for doing that?
16     A.   Hopefully an up-to-date medical system -- a
17 professional medical system be brought into the facility.
18     Q.   Did you have any other reasons for doing that?
19     A.   Not that I recall.
20          (WHEREIN, the Court Reporter marked Deposition
21 Exhibit No. 4 for identification purposes.)
22 BY MR. McCURDY:
23     Q.   Sir, I'll hand you what has been marked as

 1   Plaintiff's Exhibit 4.  Do you recognize this document?
 2       A.   It looks like the agreement between Champaign
 3   County Jail and Wexford Health Services, Incorporated.
 4       Q.   Am I correct that it's dated the first day of
 5   May 1995 in the first paragraph there?
 6       A.   Yes, that is correct.
 7       Q.   If you will turn to the very last page, do you
 8   recognize that as your signature under title of sheriff?
 9       A.   That's correct.
10       Q.   Did you have any role in the actual negotiation
11   of this contract other than going to the county board and
12   suggesting that they contract services?
13       A.   Not that I recall.  I don't know.
14       Q.   If you'll turn to Page 8 of his document under
15   Paragraph 24, it indicates the contract will be for three
16   years; is that right?
17       A.   That's correct.
18       Q.   So that would take this, if I am correct, to
19   May 1, 1998, this started in '95, correct?
20       A.   Yes.
21       Q.   It also states that you had two roll-over
22   optional years; is that right?
23       A.   That is what it says here, yes.

1   Q.   Do you know if, in fact, this contract was
2   extended?
3   A.   I believe it was.
4   Q.   Okay.  Do you have any documentation showing
5   that it was this contract that was in effect in
6   1999/2000?
7   A.   Pardon?
8   Q.   If -- this Paragraph 24 contains a term stating
9   that there is an option for the contract to continue
10  beyond 1998.  And we're talking about healthcare that
11  occurred in 1999 to 2000.  Okay?
12       I'm just asking if you were aware -- you already
13  testified you believe it was extended, correct?
14  A.   That's correct.
15  Q.   Are you aware of any documentation such as a
16  letter from you or from Wexford indicating that it would
17  continue?
18  A.   That I don't recall.  I don't know.
19  Q.   But it's your understanding that this would have
20  been the contract in place at that time?
21  A.   Yes.
22  Q.   Do you know how much Wexford was paid for their
23  services?