1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

GREGG L. DUCKWORTH,            )
                               )
        Plaintiff,             )
                               )
    vs.                        ) Case No. 3:02-CV-00381-JLF
                               )
DAVID J. MADIGAN, MAHER        )
AHMAD, M.D., and               )
FRANCIS KAYIRA, M.D.,          )
                               )
        Defendants.            )

**ORIGINAL**

THE DISCOVERY DEPOSITION OF

DAVID J. MADIGAN, the witness herein, called by the Plaintiff for examination pursuant to notice and pursuant to the provisions of the Code of Civil Procedure and the Rules of the Supreme Court thereof pertaining to the taking of depositions, taken before me, Daphne G. Killam, CSR, License No. 084-004413, a Notary Public in and for the State of Illinois, at 402 West Church Street, in the City of Champaign, County of Champaign, and State of Illinois on the 3rd day of May, A.D., 2006, commencing at 2:00 p.m.

EXHIBIT 10

1  Q. Did you have any type of medical equipment, like
2  an x-ray machines or anything like that?
3  A. No x-ray machines or anything like that. They
4  had various medical equipment there, and I couldn't tell
5  you even back then what it was.
6  Q. What about for testing? Like, for example, if
7  you took a urine specimen from an inmate, where would
8  that be tested at?
9  A. They took things to Champaign County Health
10 Department.
11 Q. So they would send that off site to the health
12 department?
13 A. Yes, public health.
14 Q. And how were -- you've testified previously that
15 there was a contract with Wexford for providing medical
16 services to the facilities, correct?
17 A. Could you repeat the first part of the question?
18 Q. You testified that Champaign County had a
19 contract with Wexford for providing medical services to
20 the inmates; is that right?
21 A. Yes, that's correct.
22 Q. How many physicians would be providing care to
23 the inmates at that time?

1   A.   I believe one.

2   Q.   Would that physician have a title?  Would that
3   be the medical director?

4   A.   Yes.

5   Q.   Do you know how many nurses would have staffed
6   that?

7   A.   I know we had two nurses.  Now, the nurses at
8   one time, even though we were contracted out with the
9   medical portion, the nurses were still county employees.
10  And I believe then later on as they either retired or
11  resigned, then it was up to Wexford to hire the nurses.

12  Q.   Okay.  And do you know when Champaign first
13  contracted with Wexford to provide these services?

14  A.   I believe it was during my first term as
15  sheriff.  I don't recall the date, but I believe it was
16  during my first term as sheriff.

17  Q.   I have the contract here.  We'll go over that in
18  a moment.  I believe 1995 -- does that sound about right?

19  A.   That sounds about right.  That might have been
20  in the second term.

21  Q.   So with the nurses, when the contract went into
22  place, they were already employees of Champaign County,
23  correct?

1  A. Whenever the state -- the state archives and
2  whatever, they mandate that they be kept, and we've done
3  that. And then they can be destroyed after that with
4  written permission from the state archives.
5      (WHEREIN, the Court Reporter marked Deposition
6  Exhibit No. 3 for identification purposes.)
7  BY MR. McCURDY:
8  Q. Sir, I'm handing you what has been marked as
9  Plaintiff's Exhibit 3. Do you recognize this form, if
10 not this document itself?
11 A. Record disposal certificate from Springfield,
12 yes.
13 Q. Is this the form that would be used in order to
14 destroy documents after they have been kept for a certain
15 period of time?
16 A. To my knowledge, yes.
17 Q. Can you read the first item that's listed under
18 the record series?
19 A. Record request forms.
20 Q. What's the inclusive date for this?
21 A. 1-9-99.
22 Q. Am I correct that on the bottom right-hand
23 corner of the box there is a stamp?

1   A.   Yes.

2   Q.   And what does that stamp say?

3   A.   Disposition approved.

4   Q.   And what would that mean?

5   A.   I would take it that the request to destroy

6   those forms listed would be approved.

7   Q.   That's just your understanding of it?

8   A.   Yes.

9   Q.   What is the date of this form?  Am I correct, it

10  has been stamped as being received on a certain date?

11  A.   The one in the lower right-hand corner?

12  Q.   I'm sorry, sir, I'm back to the top of the

13  document.  Do you see received stamp?  I'll point that

14  out to you.

15  A.   December 21, 2005.

16  Q.   Okay.  So am I correct that this would indicate

17  the resident request forms for 1999 had been destroyed

18  sometime after December 21, 2005; is that right?

19  A.   I would say that, yes.

20  Q.   Okay.  I would like to ask you now, sir, more

21  about the relationship between Champaign County and

22  Wexford.  You previously testified that Champaign County

23  had a contract with Wexford for providing medical

1  Q. You would agree the patient's complaint as set
2  forth in Exhibit 9 was not ignored by Champaign County?
3  A. That's correct.
4  Q. When I asked you before about Champaign County's
5  relationship to Dr. Ahmad, had you told me previously
6  that Champaign County did not tell Dr. Ahmad how to
7  diagnose and treat his patients, correct?
8  A. That's correct.
9  Q. You would also agree Champaign County did not
10 tell Dr. Ahmad what tests he should order, correct?
11 A. That's correct.
12 Q. If Dr. Ahmad thought a particular line of
13 treatment was appropriate, it wasn't Champaign County's
14 job to say, no, that's not right; we're going to tell you
15 what to do; am I correct?
16 A. You're correct.
17 Q. If Dr. Ahmad needed to refer a patient to
18 another doctor, that was a medical decision to be made
19 solely by Dr. Ahmad?
20 A. Correct.
21 Q. I take it you have no recollection of ever
22 discussing a Patient Duckworth or Inmate Duckworth with
23 Dr. Ahmad?