IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGG L. DUCKWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:02-cv-381-DRH |
| | ) | |
| DR. MAHER AHMAD, and DR. FRANCIS | ) | |
| KAYIRA, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by

United States District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal

Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the

Motion for Summary Judgment filed by Dr. Maher K. Ahmad on November 20, 2006 (Doc. 74).

For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED** and

that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

In this action, Gregg L. Duckworth ("Plaintiff") alleges that Dr. Maher Ahmad

("Defendant") was deliberately indifferent to his serious medical needs in violation of the Eighth

Amendment to the U.S. Constitution.  More specifically, Plaintiff alleges that Defendant failed to

properly diagnose and treat his bladder cancer.  The undisputed facts giving rise to Plaintiff's

claim are summarized below:

1.      From July 29, 1999 through June 1, 2000, Plaintiff was incarcerated in Champaign
        County Jail ("CCJ").

2.      From January 1999 through April 2000, Defendant provided medical services to inmates
        at CCJ. (Madigan Dep, pp.29-30)

3.      Defendant provided said medical services pursuant to a contract between him and

Wexford Health Services ("Wexford"), a company that was under contract with CCJ to provide medical services to inmates. (Madigan Dep., p.28)

4.      Pursuant to the contract with Wexford, CCJ employed Defendant as a "Medical Director," which entailed that he would "be [solely] responsible for all medical judgments regarding health care provided to residents at [CCJ]." (Champaign County Sheriff's Office Health Care Policy Statement, p.1)

5.      Plaintiff was seen by Defendant on August 24, 1999, October 8, 1999, November 9, 1999, January 18, 2000, and February 18, 2000.  (Madigan Dep., p.175)

6.      On August 24, 1999, Defendant medically examined Plaintiff for the first time and prepared a form summarizing the examination. The form indicated that Plaintiff complained of hematuria (the presence of blood in the urine), referred him to the Christie Clinic to be seen by a urologist, and did not prescribe any treatment for the complained of hematuria. (Madigan Dep., pp.63-66)

7.      Plaintiff complained of hematuria during his first and last visit with Defendant, but he did not orally communicate to Defendant a complaint of hematuria during visits on October 8, 1999, November 9, 1999, and January 18, 2000. (Madigan Dep., pp.179-180; Duckworth Dep., p.29)

8.      On October 9, 1999, a urinalysis Defendant ordered indicated the presence of blood in Plaintiff's urine. (Plaintiff's Motion in Opposition, Doc. 78, Ex. 8)

9.      During the January 2000 visit, Plaintiff told Defendant that he was being treated by a urologist at the Christie Clinic. (Madigan Dep., pp.110-111)

10.     During the February 2000 visit, Plaintiff told Defendant that he had observed blood in his urine.  Pursuant to Plaintiff's complaint, Defendant ordered Plaintiff to undergo an intravenous pyelogram (IVP).[1]  In reference to the ordered IVP, Defendant stated to Plaintiff: "if this comes back clear, I don't want to hear no more out of you." (Madigan Dep., p.162; Duckworth Dep. p.81)

11.     Plaintiff was diagnosed with bladder cancer after January 11, 2001. (Duckworth Dep., pp.46-47)

        In his motion for summary judgment, Defendant argues that he is entitled to a judgment

as a matter of law because his contractual relationship with Wexford was not sufficient to render

him a state actor pursuant to 42 U.S.C. § 1983.  He argues in the alternative that, if the Court

---

        [1] An intravenous pyelogram involves a series of x-rays taken of the kidneys and the bladder to detect problems in the urinary system or in the function of kidneys.

ultimately deems that he acted under color of state law, he is nonetheless entitled to summary

judgment because his medical treatment of Plaintiff would not support a finding of deliberate

indifference.  More specifically, he argues that, although doctors may disagree as to the proper

course of treatment in light of Plaintiff's visits, Plaintiff presents no evidence that Defendant

disregarded his health problems after learning about them.

In his opposition to summary judgment, Plaintiff argues that Defendant indeed acted

under color of state law because he assumed the duty to provide medical care to inmates at CCJ.

He further argues that summary judgment is not appropriate at this time because material facts

remain in dispute as to whether Defendant learned of Plaintiff's recurring hematuria via written

or verbal communications, and whether he was thereafter deliberately indifferent to the problem.

### CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it

is demonstrated "that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Haefling v. United Parcel Service, Inc., 169 F.3d

494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16

F.3d 832, 836 (7th Cir. 1994).  The burden is upon the moving party to establish that no material

facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be

resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970);

Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999).  A fact is material if it is outcome

determinative under applicable law.  Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th

Cir. 1999); Smith v. Severn, 29 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green

Bay, 105 F.3d 1169, 1173 (7th Cir. 1997).  Even if the facts are not in dispute, summary

judgment is inappropriate when the information before the court reveals a good faith dispute as

to inferences to be drawn from those facts.  Plair v. E.J. Brach & Sons, Incorporated,105 F.3d

343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994).  Finally,

summary judgment "will not be defeated simply because motive or intent are involved."  Roger

v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994).

       In deciding a motion for summary judgment, the trial court must determine whether the

evidence presented by the party opposed to the summary judgment is such that a reasonable jury

might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining
> whether there is the need for a trial--whether, in other words, there
> are any genuine factual issues that properly can be resolved only
> by a finder of fact because they may reasonably be resolved in
> favor of either party ... [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil Procedure 50(a),
> which is that the trial judge must direct a verdict if, under the
> governing law, there can be but one reasonable conclusion as to
> the verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Celotex Corporation v.

Catrett, 477 U.S. 317, 322-23 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition

Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997);

Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

       The Supreme Court has recognized that "deliberate indifference to serious medical needs

of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. Estelle

v. Gamble, 429 U.S. 97, 104, (1976).  In order to prevail on this claim, a plaintiff must show that

his condition was "objectively, sufficiently serious" and that the "prison officials acted with a

sufficiently culpable state of mind." Greeno v. Daley, 414 F.3d 645, 652-653 (7th Cir. 2005)

(citations and quotation marks omitted).  With respect to the first requirement, "[a] 'serious'

medical need is one that has been diagnosed by a physician as mandating treatment or one that is

so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Foelker v. Outagamie County, 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted).  With

4

respect to the prison official's state of mind, "the infliction of suffering on prisoners can be

found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in

the criminal law sense." Duckworth v. Franzen, 780 F.2d 645, 652-53 (7th Cir. 1985).

Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not

enough. Duckworth, 780 F.2d at 653; Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987).

Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists" and that the officials

actually drew that inference. Greeno, 414 F.3d at 653.  Finally, a plaintiff stating a claim under

section 1983 must show that alleged deprivation was committed by a person acting under color

of state law. Bublitz v. Cottey, 327 F.3d 485, 488 (7th Cir. 2003).

        Defendant first argues that he did not provide medical services to Plaintiff under color of

state law because he was not CCJ's employee and because CCJ did not contract directly with

him to obtain his services.  Contrarily, the United Supreme Court held in West v. Atkins, 487

U.S. 42, 55-56 (1988), that "[i]t is the physician's function within the state system, not the

precise terms of his employment, that determines whether his actions can fairly be attributed to

the State."  The Court in West also clarified that a state cannot avoid its constitutional duty to

provide adequate medical treatment to those in its custody by merely contracting with another

entity to provide the treatment. Id. at 56.  The West Court further explained that a physician acts

under color of state law if the state delegates to him a function it is obligated to perform, and the

physician in turn assumes that function by contract. Id.

        In the instant case, CCJ, a State of Illinois penal institution, operated under a

constitutional obligation to provide adequate medical care to its residents.  Pursuant to his

employment with Wexford, Defendant assumed the function of being solely responsible for all

medical judgments regarding health care provided to CCJ residents.  The rulings in West, when

5

applied to the foregoing facts, inevitably lead to the conclusion that Defendant's undertakings as

a medical care provider at CCJ imbued him with the color of state law. Id.  In light of the

foregoing analysis, Defendant is not entitled to summary judgment on the basis that CCJ did not

contract directly with him for his services. Id.; see also Henry v. Ryan, 775 F.Supp. 247, 250

(N.D. Ill. 1991) (interpreting West in reaching the conclusion that a private provider of medical

services and its employees were state actors for the purposes of a 42 U.S.C. § 1983 suit brought

by an inmate).

        Next, Defendant argues in the alternative that he is entitled to summary judgment

because Plaintiff cannot adduce facts showing that Defendant knew Plaintiff was not receiving

care from a urologist between his first and last visits with him, thus averring that Defendant was

merely unaware that Plaintiff's medical needs were not being treated.

        Plaintiff responds that Defendant became aware of the continuing condition: (1) through

an August 1999 report from the Christie Clinic that instructed Plaintiff to return to the clinic if he

notices blood in his urine; (2) through Plaintiff's written request of December 1999 to return to

the clinic; (3) through an October 9, 1999 urinalysis report indicating the presence of urine in the

blood; and (4) through communications from prison staff during the fall of 1999 that the October

1999 urinalysis indicated the presence of urine in the blood.  Plaintiff adds that Defendant's

February 2000 statement, "if this comes back clear, I don't want to hear no more out of you",

indicated his disregard for Plaintiff's serious medical needs.

        These facts in conjunction are not sufficient to support a finding of deliberate

indifference.  First, although a physician at Christie Clinic instructed Plaintiff to return to the

clinic if he again observed blood in his urine, there is nothing in the record indicating that

Defendant ignored Plaintiff's need for further treatment by a urologist.  In fact, Defendant had

made the original referral to a urologist and he had no reason to believe that Plaintiff was not

receiving proper treatment – especially in light of the undisputed fact that, on January 18, 2000,

Plaintiff told him that he had been receiving treatment by a urologist at Christie Clinic.

Likewise, although an exhibit shows that Plaintiff submitted an inmate request form to prison

staff to schedule a follow-up appointment at the clinic, Defendant denies that he knew of any

such request.  Because nothing in the record indicates that such a request was ever presented to

Defendant, there is insufficient evidence to support a finding that he was aware of Plaintiff's

request and that he subsequently disregarded it.

Next, Defendant's knowledge of a urinalysis indicating hematuria only establishes that he

knew Plaintiff's complaints about passing blood were true.  However, as Defendant explained in

his deposition, he did not order the more invasive IVP test after getting the urinalysis because he

believed Plaintiff was being treated by a urologist pursuant to the August 1999 referral.  The

reality that Plaintiff was not actually being seen by a specialist was elusive.  This was evidenced

by the fact that Plaintiff believed he had been treated by a urologist and communicated that

belief to Defendant.  Physicians may disagree as to whether Defendant should have double-

checked Plaintiff's medical records to ensure that the clinic gave him adequate medical

treatment.  While such disagreements are suited for evaluating claims based in negligence or

medical malpractice, they are not suited for evaluating whether Defendant was deliberately

indifferent to Plaintiff's medical needs. Duckworth, 780 F.2d at 653.  Moreover, a jury could not

reasonably find that Defendant formed a subjective disregard for Plaintiff's serious medical

needs when he relied in part upon Plaintiff's own statements to conclude that those needs were

actually being treated.

Lastly, Defendant's statement to Plaintiff that he did not want to hear more from him if

the IVP showed a negative result is insufficient alone to show deliberate indifference.  Defendant

does not deny having made a statement to Plaintiff of this nature, although he avers that Plaintiff

misinterpreted its meaning.  Certainly, a jury could reasonably interpret this statement to mean

that Defendant was irritated, and perhaps skeptical, about Plaintiff's complaints of hematuria.

Notwithstanding that interpretation, Defendant's order that Plaintiff undergo an IVP reveals his

effort to diagnose the problem rather than ignore it.  Defendant's coinciding statement, however

skeptical of Plaintiff's complaints, cannot alone contradict the fact that he acutely treated the

medical condition.  Put another way, a jury could not reasonably conclude from the statement

that Defendant's actions were deliberately indifferent to Plaintiff's medical needs when

Defendant was adequately treating the condition at the time he made the statement.  As such, no

material fact remains in dispute, and summary judgment is appropriate as this time.

### CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for

Summary Judgment (Doc. 74) be **GRANTED** and that the Court adopt the foregoing findings of

fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10)

days after service of this Recommendation to file written objections thereto.  The failure to file a

timely objection may result in the waiver of the right to challenge this Recommendation before

either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir.

2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: June 13, 2007**

s/ <i>Donald G. Wilkerson</i>
**DONALD G. WILKERSON**
**United States Magistrate Judge**
